MARY C. STRATTON *vs.* ROBERT F. STRATTON, administrator.

Kennebec.    Opinion June 3, 1885.

*Divorce. Alimony. Sequestration of real estate.*

Cross libels for divorce were filed between husband and wife. While the libel of the husband was pending, and before proceedings were commenced on the part of the wife, the parties voluntarily entered into an agreement in writing, that in case a divorce should be decreed upon the husband's libel, two referees named should determine what the wife should receive from the husband, in what way and manner, how it should be secured to her, how she should receive it, and that the report of the referees should be made a part of the decree of the court, be binding on the parties, and enforced as such. The court entered a decree of divorce in each case at the same time, and, in the proceedings on the part of the husband, ordered that alimony be paid to the wife in accordance with the award of the referees. *Held*, that the judgment of the court was valid.

Where the decree expressly states that alimony is to continue during the natural life of the wife, it will so continue even after the husband's death, and during the entire life of the wife.

Real estate cannot be sequestered for the payment of alimony, so as to secure a lien thereon, without a description in terms definite enough to identify the particular estate designated.

ON REPORT.

The opinion states the case and material facts.

*W. P. Young*, for the plaintiff.

*Baker, Baker and Cornish,* for the defendant.

The decree of alimony is void *in toto.*

The jurisdiction and powers of the court in matters of divorce, are derived solely from the statutes, and limited and controlled by them. *Henderson* v. *Henderson,* 64 Maine, 419 ; *Stratton* v. *Stratton,* 73 Maine, 481 ; *Bacon* v. *Bacon,* 43 Wis. 197 ; *Barker* v. *Dayton,* 28 Wis. 367.

The decree making a charge on the real estate of the husband, for the payment of the annuity, is unauthorized by the statute. (R. S., 1857, c. 60, § 6.)

But the point fatal to this decree is that there is no authority found in the statutes for granting alimony to the wife upon a libel in favor of the husband.

Section six of chapter sixty of the Revised Statutes of 1857, under which this divorce was granted, provides for the granting of alimony to the wife, in case she obtains a divorce for the fault of the husband. To that single instance it is limited.

And such has been the construction of this statute by our court. *Stilphen* v. *Stilphen,* 58 Maine, 515 ; *Stilphen* v. *Houdlette,* 60 Maine, 447 ; *Henderson* v. *Henderson,* 64 Maine, 419. See also *McIntire* v. *McIntire,* 18 Central Law Journal, 236.

The decree is void in so far as it grants alimony for a longer period than the life of the husband.

It will be observed that the award terms the sum granted an "annuity." It says that the libelant shall pay to the libelee "an annuity of two hundred and fifty dollars, " that the real estate of the libelant shall "stand charged with the payment of this annuity, " and that the libelant may give bond "to pay the annuity above awarded. "

It would seem then, that the referees, who were men learned in the law and familiar with its technical terms, deemed this an annuity.

If so considered, its life was co-existent with the life of the grantor, the libelant, and on his death became also dead.

The principle is stated by Chancellor KENT, in these words : "Unless the grantor grants the annuity for himself and his heirs, the heirs of the grantor are not bound, for the law presumes, by

the omission to name them, that he did not intend to include them in the obligation. " 3 Kent's Com. 460 ; Co. Litt. 144 b.

No decree for the support of a divorced wife can continue longer than the obligation of the husband to support his wife continues. That obligation ceases with his life, and if she outlives him, the decree ceases. 2 Bish. on Mar. and Div. § 428.

"A demand for alimony, being personal, dies with the husband. " Fonbl. Eq. 3d. Am. Ed. 62 ; *Lockridge* v. *Lockridge*, 3 Dana, (Ky.) 28 ; *Wallingsford* v. *Wallingsford*, 6 Har. and Johns. 485–8.

In the very recent case of *Lennahan* v. *O'Keefe*, 107 Ill. 620, decided November, 1883, ( see 29 Alb. Law J. 157,) the supreme court of Illinois, in an elaborate opinion, held that in the absence of language in a decree giving a wife alimony, showing unequivocally an intention to bind the heir of the husband after his death, the allowance of alimony will terminate with the life of the husband.

The supreme court of Massachusetts have recently passed upon the same question in *Knapp* v. *Knapp*, 134 Mass. 353.

FOSTER, J. In 1860, at the March term of this court for the county of Kennebec, cross libels for divorce were pending between this plaintiff and her husband. During the pendency of the husband's libel, and prior to said term of court, the parties thereto entered into an agreement in writing, signed by each of them, that in case a divorce should be decreed upon said libel, two referees named in said agreement, should determine what the libelee should receive from the libelant, in what way and manner, how it should be secured to her, and how she should receive it. It was also agreed that the report of the referees should be made a part of the decree of the court, and should be binding on the parties, and enforced as such. The referees, accordingly, heard the parties, and made their report to the court. Their award, which, together with said agreement, was extended upon the records and made a part of the proceedings in said action, provided, among other things, that the said libelant should pay to the libelee — the present plaintiff — " during her natural life, an annuity of two hundred and fifty

dollars, to be·paid quarterly in advance, " etc.   Upon the same
day of the said March term, a divorce was decreed to each
libelant in each of said actions ; in that wherein the husband was .
libelant, the court " ordered that alimony, according to the
award of Nathan Western and Lot M. Morrill on file, be received
and paid as therein provided. "

From that time forward, till April 2, 1881, the plaintiff
received the sum thus awarded, and ordered by the court to be
paid ; since which time, nothing has been paid to her.   William
M. Stratton died August 6, 1883, and this action of debt upon
judgment, is brought against the administrator of his estate, to
recover the installments accruing since the last payment, both
prior to and since the death of said William M. Stratton.

The defence set up is two fold ; *first*, that the court had no
jurisdiction to grant alimony, and, therefore, that the judgment
is void ; and *second*, that the court had no authority to grant
alimony beyond the lifetime of said William M. Stratton, and
that said judgment became inoperative and void at his decease.

I.   We are not satisfied that the defence here set up, should
prevail.   Both parties were in court as petitioners in separate
proceedings, and, from anything that appears to the contrary,
the court entered its decrees in each case, not only on the same
day, but at the same time.   While the libel of the husband was
pending, and before proceedings commenced on the part of the
wife, the parties voluntarily entered into the agreement herein-
before named, submitting to referees the question of what sum the
libelee should receive from the libelant, and agreeing that their
award should be made a part of the decree of the court, and
should be binding on the parties.

Such agreements, where there is no collusion for procuring a
divorce, have been sanctioned by the courts, not only in this,
but in other states.   *Snow* v. *Gould*, 74 Maine, 544; *Carter*
v. *Carter*, 109 Mass. 309.   The agreement and award related to
the proceedings in which the husband was libelant and the wife
was libelee.   The court, as well as the parties, must have so
understood it, and acted upon it, as it has been spread upon the
records of the court in that action, and in express terms refers

to it. Was the judgment of the court rendered void by incorporating into it the award of referees, mutually agreed upon by the parties, and which, by that agreement, was to be made a part of its decree?

The objection raised is, that it was beyond the jurisdiction of the court to allow alimony to the wife on the libel of the husband.

This is undoubtedly true in cases where there is no waiver by the husband of his strict legal rights, and the decree is made in opposition to his will. It may be conceded to be settled in this state that the jurisdiction and authority of the court, in matters pertaining to divorce, are derived from the provisions of the statute, *Henderson* v. *Henderson,* 64 Maine, 419. But the court, being invested with jurisdiction in reference to alimony, there is nothing whereby parties are prohibited from entering into a proper agreement in reference thereto, or the court from rendering judgment in accordance with the agreement of the parties, which they have seen fit to make, as in other cases. In relation to such judgments, the court, in *Fletcher* v. *Holmes,* 25 Ind. 458, says : "It is well settled that a judgment by agreement of a court of general jurisdiction, having power in a proper case to render such judgment, and having the parties before it, will bind the parties, notwithstanding proceedings in a contested case would not authorize such judgment. "

And by this, it should not be understood that we mean to hold that the consent of parties can give the court jurisdiction of the subject matter in controversy, where *no* jurisdiction has been conferred upon it by the legislature. But that when the court has jurisdiction of the general subject matter in controversy, — "power to adjudge concerning the general question involved, " as said by FOLGER, J., in *Hunt* v. *Hunt,* 72 N. Y. 217, then the consent of the parties may authorize the court to render a valid judgment, in accordance with such agreement.

In the case at bar, so much of the judgment or decree as relates to the question of alimony was rendered in accordance with the agreement and consent of the parties, upon the award and report of the referees mutually chosen by them. A divorce

was decreed in favor of the wife on her libel as well as in favor of the husband on his, and at the same time. The court had jurisdiction to award alimony on the wife's libel; but if the husband preferred that such decree should be made on his libel instead of hers, it was perfectly competent for him to so agree as a condition on which a divorce should be decreed to him, and having so agreed, and the court having so decreed, it is binding upon him and his legal representatives. If the defence relied upon is to prevail, then the plaintiff was prejudiced by the action of her husband in entering into that agreement with her relating to the amount he was to pay her, in case a divorce should be obtained upon his libel. She desired a decree for alimony. Divorce was decreed to her — as well as to her husband — and for his fault. She might have obtained such a decree in the case in which she was plaintiff, where its validity would not have been questioned, had not the husband agreed that such decree should be made in the action commenced by himself, and be "binding on the parties." Relying upon that agreement, she accepted the decree as made. The husband's rights were not violated; nor was he in any way prejudiced by the entry of the decree for alimony, in strict accordance with his own agreement, in the one case rather than in the other. His acts in accordance with that decree for more than twenty-one years thereafter are strongly indicative of this fact.

And the facts in this case clearly distinguish it from those in which it is held that alimony can be granted only upon a libel in favor of the wife, as in *Stilphen* v. *Stilphen*, 58 Maine, 515; *Stilphen* v. *Houdlette*, 60 Maine, 447 and *Henderson* v. *Henderson*, 64 Maine, 419. In those cases the court was called upon to decide as to the strict legal rights of the parties and where there had been no waiver, or agreement, as in the case at bar.

But assuming that the decree was irregular, it was at most but error, and the husband being in court and represented by counsel might have excepted, and not having excepted, he may be considered as having waived the error or irregularity. *Conway Ins. Co.* v. *Sewall*, 54 Maine, 357; *Prescott* v. *Prescott*, 59 Maine, 153.

Furthermore, whenever from the record a want of jurisdiction is not apparent, and a judgment remains unreversed, it is conclusive upon the parties and those in privity with them whenever any question arises in reference to it before any judicial tribunal. And " where a want of jurisdiction actually exists in a domestic tribunal of general jurisdiction," says WHITMAN, C. J., in *Granger* v. *Clark*, 22 Maine, 130, "and is not apparent upon the record, there must be some appropriate mode of ascertaining it. This mode is by writ of error. And until such appropriate mode has been resorted to, and has proved effectual, the judgment must be considered as conclusive, and importing absolute verity."

II. The court, in adopting the award of the referees as a part of its decree, gave alimony to the wife "during her natural life." That the court has the power so to do, where it may be granted at all, seems to be very strongly implied by the terms of the statute which provide that the court may order so much of the husband's real estate, or the rents and profits thereof as is necessary, to be assigned and set out to the wife for life. Moreover, where the language of the decree expressly states that it is to continue after the death of the husband, the authorities hold that it will so continue, *Miller* v. *Miller*, 64 Maine, 489 ; Bishop, Mar. and Div. § 601. In *Burr* v. *Burr*, 10 Paige, 20, in the chancellor's court, and afterwards affirmed in the court of errors, 7 Hill, 207, it was held that alimony could be decreed to continue after the husband's death, during the entire life of the wife. And in *Carson* v. *Murray*, 3 Paige, 483, the husband and wife agreed to separate, and in the agreement was a provision for the payment of an annuity of one hundred and seventy-five dollars to the wife yearly, as alimony, during her life, and the court held that it did not cease at the death of the husband.

The Supreme Court of Iowa in *O'Hagan* v. *O'Hagan*, 4 Iowa, 509, say : " In decreeing her sums of money in the first instance, or in making the proper and equitable order in relation to this property and her maintenance, the decree may provide for the payment thereof from year to year for a specific period, or may provide even that it shall continue during her life."

The authorities cited by the defendant's counsel do not support the position claimed by him. When examined they will be found to relate to cases wherein the court did not in express terms provide for the payment of alimony during the life of the wife. Thus in the case of *Lennahan* v. *O'Keefe*, 107 Ill. 620, the court, referring to *O'Hagan* v. *O'Hagan, supra*, hold that in the *absence* of language in the decree, showing an intention to bind the heir of the husband after his death, the allowance of alimony will terminate with the life of the husband.

In *Knapp* v. *Knapp*, 134 Mass. 353, there was no provision in the decree that the alimony should continue during the life of the wife; the decree was for alimony, with no words expressive of any intention for its continuance beyond the life of the husband.

III. But in the decree in the case before us, even adopting the language of the award, there is no sufficient designation of the real estate upon which any lien for alimony can attach. The estate is not set out or described in terms that give sufficient identification. *Hills* v. *Hills*, 76 Maine, 488.

In accordance with the stipulation in the report of the case, the decision of the court is that the action is maintainable, not only for the installments due before, but subsequent to, the death of William M. Stratton.

PETERS, C. J., WALTON, DANFORTH, LIBBEY and EMERY, JJ., concurred.