MARIA P. STOREY

v.

EUREKA C. STOREY ET AL.

*Divorce—Alimony—Agreement—Continuance after Husband's Death—*
*Power of the Courts.*

1.  Upon appeal from an order of the court below rescinding a former order which directed that the payment of alimony be continued to a divorced wife after the death of the husband, it is *held:* That the words, " so long as she may be and remain sole and unmarried," do not extend the right of the wife to alimony beyond the natural life of the husband; that the terms of the decree limit her right but do not enlarge the husband's obligations; that, even if the court had power to decree alimony after the husband's death, the intention so to do does not plainly appear in the decree; that the decree, although entered by consent. is not an agreement; and that the bond given to secure the performance of the decree does not enlarge it or change its signification.

2.  It *seems* to be doubtful whether, under our statute, the courts have power to charge the payment of alimony on the estate or on the heir after the husband's death.

[Opinion filed July 27, 1887.]

APPEAL from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding.

Statement of the case : At the February term of the Circuit Court, A. D. 1868, Maria P. Storey was granted a decree of divorce from Wilbur F. Storey on the ground of desertion. The portion of said decree having reference to alimony is as follows : "And the cause further coming on to be heard on the question of alimony and maintenance of the said complainant, it is thereupon by and with the consent of the said parties complainant and defendant, ordered, adjudged and decreed that the said defendant, Wilbur F. Storey, do from henceforth pay or cause to be paid to and for the use of the said complainant, for so long as she may be and remain sole and unmarried, the sum of $2,000 per annum, to be paid

to her quarterly in installments of $500 each, the first of which shall be payable on the first day of June, A. D. 1868, and the same sum every three months thereafter during the time aforesaid, at such place or places in Chicago as she shall from time to time appoint; and further that said sums of money shall be and they are hereby declared to be a lien upon the following premises and lands, but upon none other, situated in the City of Chicago, County of Cook and State of Illinois, to wit: part of lots 1 and 2, in block 57, in the original Town of Chicago. And that for the better giving notice of said lien and the security of the payment of the said alimony and the performance of all the requirements of this decree, the said defendant execute and deliver a mortgage or trust deed of said land and premises to Sidney Meyers in trust for said Maria P. Storey in proper form;" and further that he shall pay all taxes and assessments against said premises, and shall keep the rents of the buildings on said premises insured to the amount of $2,000 per annum for her benefit.

Said Wilbur F. Storey gave his bond to secure said decree in the penal sum of $50,000 in and by which he bound himself, his heirs, executors and administrators. The condition of the bond was as follows: "The condition of the above obligation is such that, whereas, by a certain order and decree of the Circuit Court of Cook County, Illinois, it was and is, amongst other things, ordered, adjudged and decreed the above named obligor should from henceforth pay or cause to be paid to and for the use of the said Maria P. Storey, for so long as she may be and remain sole and unmarried, the sum of $2,000 per annum, to be paid to her quarterly in installments of $500 each, the first of which shall be payable on the first day of June, A. D. 1868, and the same sum every three months thereafter during the time aforesaid, at such place or places in Chicago as she shall from time to time appoint; and further, that said sums of money shall be a lien and were in and by said order and decree declared to be a lien and charge upon the following premises and lands, but upon none other, situate [etc., describing lands as in decree above], * * * which said order and the terms thereof the said obligor hath agreed and doth hereby agree to stand to, abide by and perform.

"And, whereas, said obligor herein named has further agreed, and does hereby agree in consideration of $1 to him in hand paid, * * * that he will insure the rents of the buildings on said premises to the amount of $2,000 per annum, in some good responsible insurance company or companies and assign the same to Maria P. Storey, such insurance to be kept up as long as the said sum of $2,000 per annum shall be payable as provided in said decree; and the duty of keeping up said decree shall be binding upon the heirs, executors and administrators of the said Wilbur F. Storey and the grantees and assigns of the said premises * * *

"Now, therefore, if the said Wilbur F. Storey shall well and truly stand to, abide by and perform all and singular the terms, requirements and provisions in and by the said order and decree specified to be kept, done and performed by him, and shall well and truly keep and perform his said agreement hereby made, to abide by and perform the same agreeable to the terms thereof and in relation to taxes, assessments and insurance, then this obligation shall be void, otherwise the same shall remain in full force and effect."

A trust deed was executed by said Storey to Sidney Meyers securing said bond.

In August, 1882, said Storey sold to John Q. Adams the land covered by said trust deed, and took back from Adams a note for $30,000 which was secured by a trust deed upon the same property from said Adams to Lambert Tree. The note bore interest at seven per cent. payable semi-annually, and contained the following condition:

"The condition of this note being the conveyance by said Storey to the undersigned, of certain premises on which there is an incumbrance given to secure the annual payment of $2,000 to one Maria P. Storey, as shown by trust deed given by said Storey to one Sidney Meyers, dated February 17. 1868, and recorded May 6, 1874, in the recorder's office of Cook County, Illinois. And it is hereby understood and agreed that in case said Maria P. Storey is alive and is entitled to have and receive said $2,000 per annum at the maturity of the above note, that then and in that case the payment of the above note

shall be extended and same made payable on or before five years after said maturity, and in case she is alive and entitled to receive said sum at the expiration of said extension, there shall be another like extension and so on until such time as said premises so purchased can be fully released and discharged from said lien. And it is also understood and agreed that in case said Storey, his heirs, executors, administrators or assigns shall fail, neglect or refuse to make the payments and perform the covenants and conditions specified in said bond, fully set forth in and described in said trust deed, then  *  *  * it shall be lawful for the undersigned, his heirs, etc., to make the payments and perform the covenants contained in said bond and to do all that may be necessary to keep said premises from being sold under said incumbrance."

After the death of Wilbur F. Storey, and pending a contest of his will, his widow, Eureka C. Storey, filed a bill in the Circuit Court and procured a receiver to be appointed to conserve and manage and control the estate of deceased. The note of said Adams above set out came, with other property, into the hands of the receiver, and he was ordered by the court that from the interest collected on the said promissory note for $30,000, and the money received by him in the conduct of said business, he pay the sum of $2,000 per annum to Maria P. Storey in quarterly installments of $500, in accordance with a decree and agreement in regard to alimony to be paid by Wilbur F. Storey to said Maria P. Storey.

Afterward Eureka C. Storey made her motion in the court to rescind the order directing said payment to said Maria P. Storey, and said Maria P. Storey made a cross-motion asking that the payment be continued to her.

The court rescinded the order directing said payments, and directed that the payment of any sum by the receiver to said Maria P. Storey be stopped.

From said rescinding order this appeal is prosecuted.

Messrs. Miller, Lewis & Judson and M. W. Fuller, for appellant.

A decree against the husband for the payment of statutory

alimony to the wife is to be treated precisely like a judgment in her favor against a stranger for a corresponding amount, and in giving effect to it no attention whatever is paid to the previous marital relations of the parties, or to the fact that it was given for the support and maintenance of the wife. It is her property, whether needed for her support or not, and goes to her representatives. Dinet v. Eigenmann, 80 Ill. 274; Miller v. Clark, 2 Ind. 371, 376.

We suppose it will be conceded that if a decree, directing payment of alimony to the wife annually during her life, would survive the husband and bind his estate after his decease, a decree directing payment of alimony so long as she remains sole and unmarried will have that effect. A court of chancery, upon a decree for a divorce or separation, may allow alimony to the wife to continue during her life, although she should outlive her husband. Bishop on Marriage and Divorce, (6th Ed.) 428; O'Hagan v. O'Hagan, 4 Iowa, 516; Burr v. Burr, 7 Hill, 209; Richardson v. Richardson, 8 Frazer, 67; Fischli v. Fischli, 1 Blackf. 360; Reavis v. Reavis, 1 Scam. 242; Burr v. Burr, 10 Paige, 20; Stratton v. Stratton, 77 Me. 373; Carson v. Murray, 3 Paige, 483.

In Dinet v. Eigenmann, 80 Ill. 274, the court decreed payment to the wife for $10,000, in gross, and the further sum of $2,000 per annum during her life. On page 277 the court says: " It is proper that such support be afforded by assessed half-yearly or quarterly allowance of a fixed sum as long as she lives, or until supervening circumstances render it improper."

But there is another element in this case which places this question beyond the reach of controversy. The decree recites that that portion of it which relates to alimony is entered " with the consent of the parties complainant and defendant." It therefore appears that it was distinctly understood and agreed by and between said Maria P. Storey and Wilbur F. Storey before the decree touching the alimony to be paid to said Maria P. Storey by Wilbur F. Storey was entered, that the said Wilbur F. Storey should secure the payment to the said Maria P. Storey of the said sum of $2,000, in quarterly payments of $500 each, so long as she should remain sole and

unmarried, and that said Wilbur F. Storey should execute and deliver to Sidney Meyers a mortgage or trust deed of the premises described in said decree, in the proper form, to secure the payment thereof.

The trust deed should be regarded as a portion of the decree, and the payment of this alimony is thereby made expressly binding upon the heirs of said Wilbur F. Storey. While the parties to a suit for divorce have no right to make any agreement as to whether the divorce shall be granted, they may agree upon the subject of alimony, and the court will embody their agreement upon the subject in its decree. In other words, where the court has jurisdiction of the subject, the consent of the parties will authorize it to enter a valid decree or judgment in accordance with such agreement. Stratton v. Stratton, 77 Me. 377; Fletcher v. Holmes, 25 Ind. 458.

In Miller v. Miller, 64 Me. 484, the court, while recognizing the fact that the law imposes no duty on the husband to make provisions for his wife's support after his death, say, nevertheless, in speaking of a case that had been cited to them: "The court did not decide that a husband could not make a contract for his wife's support that should be binding upon his administrator. We apprehend no court ever so decided."

All the authorities are to the effect that the obligation of a decree requiring a husband to pay alimony "during the life" of the wife, continues after his death, and is binding upon his estate.

In this case the obligation to pay the money is to continue until Mrs. Storey re-marries, that is, during her natural life, unless she re-marries. The duration of the obligation is as clearly and definitely fixed by this language as by the language "during her life," and if she survives him and does not re-marry, the obligation continues after his death, and binds his estate.

Messrs. TRUMBULL, ROBBINS & TRUMBULL, for Eureka C. Storey, appellee.

The appellant is not entitled in any proceeding to recover

alimony from the estate of her deceased husband, accruing after his death.

The statute gives the divorced wife dower when divorced for the husband's fault.

It is, therefore, admitted that the complainant is entitled to be endowed of the third part of all the lands whereof her husband was seized, at any time during the marriage, unless the same shall have been relinquished by her.

Except where a statute otherwise provides, alimony ceases at the death of the husband. "Alimony, in divorce law, is the allowance which the husband pays, by order of court, to his wife while living separate from her, for her maintenance." 2 Bishop, M. & D., Sec. 351.

"So, by the unwritten rule, alimony can not be ordered for the term of the wife's life; because it is a maintenance to her, while the husband's duty to maintain her ceases at his death." 2 Bishop, M. &. D., Sec. 428; see, also, Wallingford v. Wallingford, 6 Harris & J. 483; Lockbridge v. Lockbridge, 3 Dana, 29; Field v. Field, 15 Abb. N. C. 434.

In Knapp v. Knapp, 134 Mass. 355, the court says: "As alimony out of the husband's property is a provision for the support of the wife by him, the obligation to pay it in the future necessarily ceases with the death of the husband, but amounts already due at the time of his death are in the nature of a debt then existing, and are payable out of his estate." Francis v. Francis, 31 Gratt. 289; Castell v. Castell, 38 Ark. 478.

Lennahan v. O'Keefe, 107 Ill. 620, was a case where the wife of Lennahan was divorced from him for his fault, and alimony awarded her "until further order of this court." One of the heirs of Lennahan filed a bill against his divorced wife, praying, among other things, that her decree for alimony be modified or canceled. A decree was rendered by the Circuit Court "that the alimony decreed to Johanna (the divorced wife) ceased at the death of her husband, and that the lands were discharged from that lien, except in so far as there was unpaid alimony which had accrued in the lifetime of Lennahan."

The decree in the present case is personal.  "That the said defendant, Wilbur F. Storey, do from henceforth pay," etc. There is nothing in the decree showing an intention to bind the heirs.  The words, "so long as she may be and remain sole and unmarried," have no significance, as the alimony would have ceased upon her re-marriage, without any such provision.  Stillman v. Stillman, 99 Ill. 196.

MORAN, J.   The only question presented is whether the decree of divorce in the case of Maria P. Storey v. Wilbur F. Storey in directing that said Wilbur F. Storey "do henceforth pay or cause to be paid to and for the use of the said complainant for so long as she may be and remain sole and unmarried the sum of $2,000 per annum," created an obligation which bound the heirs of Wilbur F. Storey to the payment of said sum or charged his estate therewith after his death.   The language quoted from the decree is the order of the court "on the question of alimony and maintenance of" said Maria P. Storey, and the sum to be paid annually is strictly alimony.

"Alimony in divorce law is the allowance which a husband pays by order of court to his wife while living separate from him for her maintenance."  2 Bishop, M. and D., Sec. 351.   As to its continuance after the husband's death our Supreme Court says:   "We know of no case in which it has been held to be a debt continuing after the death of the husband and against the heir, but directly the contrary was held in O'Hagan v. O'Hagan, 4 Iowa, 509, and as we think upon sufficient reason."   Lennahan v. O'Keefe, 107 Ill. 620.   It is contended by appellee that it was in the power of the court, under our statute, to decree alimony in such manner as to charge the payment of it on the estate or on the heir after the husband's death, and that the term, "so long as she may be and remain sole and unmarried," is to be construed to extend the payment for her natural life, provided she remain sole and unmarried.

We can not assent to this view.   By the terms of the decree the right to alimony would cease upon the marriage of appellant, but if she remained sole her right to the alimony would

continue as long as the duty to pay alimony subsisted, *i. e.*, during the life of the husband. The terms of the decree limit her right if she should marry, but do not enlarge the husband's obligation.

Assuming the power of the court to be as broad as counsel contends, the terms of the decree, in our opinion, therefore, fall far short of charging upon the heir the duty of paying the specified sum per year as long as appellant shall remain sole.

Upon the death of her husband, she having obtained a divorce for his fault, became entitled to dower in his property. To give her alimony in addition, the intention must be plainly manifested in the decree.

"In the absence of language showing unequivocally that the intention was to bind the heir by such a decree, we are of opinion that it does not do so, but that its life terminates with the life of the defendant." Lennahan v. O'Keefe, *supra.* In Stratton v. Stratton, 77 Me. 373, cited and relied on by counsel for appellant, the decree provided that the husband should pay to the wife "during her natural life an annuity of $250, to be paid quarterly in advance."

Here are unequivocal words, which would seem to justify the conclusion of the court that the annuity did not cease at the death of the husband; but whether these words, without more, would be held sufficient in this State to establish affirmatively and unequivocally an intention to charge the heir, we think somewhat doubtful under the intimations given by our Supreme Court.

It is argued that this portion of the decree fixing the alimony was by consent, and that therefore it was an agreement on the part of Wilbur F. Storey that appellant should be paid the amount as long as she should remain sole and unmarried, and that by the bond given to secure the decree, Storey refers to this order as follows: "Which said order and decree, and the terms thereof, the said obligor hath agreed and doth hereby agree to stand to," etc.

The decree is not an agreement between the parties and does not purport to be. It does appear that it was entered by the consent of the parties, but that fact can not affect the con-

struction of it.  The language of it must be given the same effect whether it was assented to by the parties or entered by the court against the objection of one or both of them.

As to the bond, it but secures the performance of the decree as entered.  It in no manner enlarges the decree or changes its significat'. n.

We are of opinion that the Circuit Court committed no error in entering the decretal order appealed from, and the same will therefore be affirmed.

*Decree affirmed.*