[Civ. No. 5903. Fourth Dist. Nov. 26, 1958.]

MERLE L. CARR, Appellant, v. EDNA J. CARR, Respondent.

570

Louise C. Barry for Appellant.

Clayson, Stark & Rothrock and Victor A. Gables for Respondent.

GRIFFIN, P. J.—An interlocutory judgment of divorce was granted to plaintiff husband (on the grounds of cruelty). The court approved a property settlement agreement executed by the parties in October, 1948, and ordered disposition of the community property according to the terms of the agreement. It also provided for the payment of $100 per month alimony to defendant in accordance with the terms of a stipulation of the parties executed October 19, 1948. Final judgment ordering performance of the executory provisions of the interlocutory decree was filed November 4, 1949. On plaintiff's application on February 6, 1950, the court modified the order for alimony, reducing it to $80 per month commencing February 10, 1950. On February 15, 1951, the court filed its order adjudging plaintiff in contempt for failure to pay accumulated alimony or support to defendant, totaling $200. It also denied plaintiff's countermotion to terminate alimony or support payments. On May 29, 1952, a similar contempt order was issued for failure to pay $560 alimony in arrears. On August 13, 1952, it denied a second motion to terminate alimony payments. On October 8, 1957, plaintiff filed a motion to modify the interlocutory and final judgments pertaining to alimony and vacate the later judgments in reference thereto, and on November 18, 1957, said motion was denied. This appeal is from the order denying plaintiff's motion to vacate the award of alimony in the interlocutory judgment of October 21, 1948, the final decree of November 3, 1949, and all later orders or judgments pertaining to alimony.

The main contention of the plaintiff on this appeal is that the court had no jurisdiction or power to award ali-

mony to the wife when the husband obtained a divorce from her on the grounds of cruelty, and that a husband cannot be compelled under section 139 of the Civil Code to pay alimony to a guilty wife. There is adequate authority for this general proposition of law. (*Harper* v. *Carpenter*, 24 Cal.App.2d Supp. 751 [67 P.2d 762]; *Harwell* v. *Harwell*, 26 Cal.App.2d 143 [78 P.2d 1167].) ▮ Some modification of this rule is noted in *De Burgh* v. *De Burgh*, 39 Cal.2d 858 [250 P.2d 598], where it is held that if a divorce is granted to both parties alimony may be awarded to either, for the basis of liability for alimony is the granting of a divorce against the person required to pay it.

▮ A different rule prevails where it is provided by separate agreement that the husband will pay alimony or support money to the wife in settlement of their obligations to each other growing out of their marital relation and for the purpose of avoiding all litigation and contention, and to adjust the same amicably and finally as between themselves where such agreement is confirmed by the court and recited in the decree. (*Remondino* v. *Remondino*, 41 Cal.App.2d 208 [106 P.2d 437]; *McKinney* v. *McKinney*, 152 Kan. 372 [103 P.2d 793].) See also *Wilson* v. *Wilson*, 140 Me. 250 [36 A.2d 774, 775], where it is said (quoting from *Stratton* v. *Stratton*, 77 Me. 373, 377 [52 Am.Rep. 779]):

" 'But the court, being invested with jurisdiction in reference to alimony, there is nothing whereby parties are prohibited from entering into a proper agreement in reference thereto, or the court from rendering judgment in accordance with the agreement of the parties, which they have seen fit to make, as in other cases. . . .

" 'And by this, it should not be understood that we mean to hold that the consent of parties can give the court jurisdiction of the subject matter in controversy, where *no* jurisdiction has been conferred upon it by the legislature. But that when the court has jurisdiction of the general subject matter in controversy,—"power to adjudge concerning the general question involved," . . . then the consent of the parties may authorize the court to render a valid judgment, in accordance with such agreement.' "

And further, at page 775 [36 A.2d]: "It is difficult to conceive of more compelling particular circumstances justifying the employment of the exception to the general rule than when, with the parties before the Court, there is a noncollusive, court-approved agreement as to alimony, perhaps then ac-

ceded to by the husband because he believes that it is only fair and just that following the separation she have such support, which he is willing to provide, and especially when she may have no other means due to age, poor·health, or some other cause. She may believe she could prevail in a contest, but desists in reliance upon his valid promise. He obtains his divorce. Afterwards he breaks his word. Should the Court shield him in such a reprehensible act and deny her the agreed-upon subsistence, because he obtained his divorce for her fault?''

See also *Fox* v. *Fox,* 42 Cal.2d 49 [265 P.2d 881] ; *Dexter* v. *Dexter,* 42 Cal.2d 36 [265 P.2d 873] ; and *Howarth* v. *Howarth,* 81 Cal.App.2d 266 [183 P.2d 670].

■ The record shows plaintiff filed his action for divorce and the parties entered into negotiations for the purpose of obtaining an amicable settlement of their differences. The marriage could not be saved. A bitter and expensive divorce litigation was avoided when the parties finally arrived at a settlement and agreed upon their respective rights to property, support and maintenance. As the result of these negotiations, a property settlement agreement and stipulation amending said agreement with respect to the question of support, were both executed by the parties on October 19, 1948. That is the date of the agreement and it reads in part as follows:

''WHEREAS, marital differences have caused the parties to separate and it is their desire and intent to live separate and apart from each other permanently and to effect a full and final settlement of their respective rights of property and to support and maintenance, each from the other . . .

''WHEREAS, each party is acting herein freely and deliberately and with the aid and advice of separate counsel;

''Now, THEREFORE, in consideration of the respective covenants and promises . . . said parties covenant, promise and agree as follows:''

The husband quitclaimed his interest in certain real property unto his wife, subject to a deed of trust, plus furniture, etc., a certain small deposit in the bank, and nominal bonds. Plaintiff received a 1947 Ford coupé and a certificate of interest in a life insurance policy. It was agreed that each party pay his or her own attorney's fees. Then contained in the general quitclaim and release clause is the following expression:

''. . . except as in this instrument otherwise stipulated,''

each party releases the other from support "granted by law, and to alimony, suit money or attorney's fees in any action for . . . divorce commenced or prosecuted by either party . . ."

Apparently this agreement was signed by both parties, as well as by their attorneys. Defendant contends it was signed by them and their counsel on the same day and in connection therewith, and as a material part thereof, they also signed a written stipulation which is in evidence and reads in part as follows:

"It is stipulated . . .

"1. Any decree of divorce granted to plaintiff herein shall contain a provision approving the Property Settlement Agreement entered into between said parties on or about October 19, 1948, a copy of which is filed in this action.

"2. The said decree of divorce shall further provide that plaintiff pay to defendant as alimony, the sum of One Hundred ($100) Dollars per month beginning November 1, 1948; said payments to continue until such time as defendant shall remarry, or until further order of the court." And that:

"In consideration of said stipulation, the defendant Edna J. Carr appears in the above entitled action, waives time to plead to plaintiff's complaint and she further stipulates that this action may be heard at any time convenient to the court, as a default matter."

Plaintiff now contends he signed the stipulation the day after he signed the property settlement agreement, although it is dated October 19, 1948. On October 19th defendant wrote a letter to a depositary authorizing him to deliver the enclosed agreement and stipulation duly signed by her to plaintiff's counsel when plaintiff executed the quitclaim deed to the property assigned to her and after he had collected "Fifty Dollars ($50)" representing alimony for the last one-half of October at the rate of $100 per month. She said it was her understanding that Mr. Carr would obtain his decree of divorce without contest by her, when these conditions were fulfilled. Apparently these conditions were fulfilled and thereafter plaintiff obtained a decree reciting that the property settlement agreement of the parties executed on "October 19, 1948, filed herein, is approved" and that plaintiff is ordered to pay defendant alimony in the sum of $100 per month, payable on the 10th and 25th of each month commencing on November 10, 1948, and to continue until the remarriage of the defendant "or the further order of this court." This order was in accordance with the written stipu-

lation filed therein prior to the time of the making of the order. The court examined the property settlement agreement and stipulation, both dated October 19th. It did not set forth the agreement *in haec verba* in the decree, but approved in general terms "the property settlement agreement of the parties executed by them on October 19, 1948, filed herein." It becomes apparent that the court was also approving the stipulation as an amendment to and as a part of that agreement.

At one of the hearings on October 18, 1957, defendant testified at the time of the negotiations leading up to the property settlement agreement it was her understanding that she had grounds for a divorce and a right to obtain one, and at that time it was her intention to seek alimony or the right to support from Mr. Carr; that she considered the agreement and stipulation entered into as binding upon them; that she conditionally forwarded these documents to plaintiff for acceptance or disapproval and he accepted them; that he relied upon the decree, remarried, abided by the terms of the order for several years, and recognized the judgment for alimony by endeavoring to have it modified on several occasions; that he was successful in reducing said amount to $80 per month but failed in his attempt to set aside the judgment and some of the orders here under consideration on the same grounds as here contended; and that no appeal was taken from those orders. There was considerable showing that defendant is in serious ailing health and in need of money to support her, and that plaintiff is able to pay the amount required by the support order.

Although the original property settlement agreement did contain a clause waiving the right to alimony or support money, it is quite apparent from the record that this agreement was not acceptable to defendant unless it contained some provision for her support. Accordingly, it was thus amended and adopted by plaintiff as such.

Plaintiff's prior pleadings on a "Motion to Vacate the Order to Show Cause Re Contempt Proceedings and to Terminate Order Requiring Alimony," alleged that "On the 19th day of October, 1948, defendant Edna J. Carr entered into a Property Settlement Agreement with plaintiff, approved by her counsel, supplemented on the same date by a 'Stipulation, Appearance and Waiver' entered into between plaintiff and defendant and approved by their respective counsel, providing as follows: . . . The intent of said Stipulation, amending the

Property Settlement Agreement, was to provide support for defendant. . . .''

The trial court, in the instant proceedings, so found and also found that the stipulation was incorporated into said main agreement. This finding has evidentiary support, and the court had jurisdiction and power to enter the order contained in the interlocutory and final decrees.

■ Plaintiff further argues that the stipulation or amendment was not a valid or enforceable agreement because it had no valid consideration to support it, citing *Bishop* v. *Bishop* (Mo.App., 1942), 162 S.W.2d 332; *Loveren* v. *Loveren,* 106 Cal. 509 [39 P. 801]; and sections 1607, 1667, 3513 and 3539, Civil Code. We see no merit to this claim. It does not appear that there was any collusion between the parties in reference to obtaining the divorce. For all that appears, both parties claimed they had a just cause of action for divorce. The agreement and stipulation, in respect to the property rights and support, did not depend on the outcome of the divorce action but if one was granted to plaintiff it should provide for her support in the amount named and for the period provided.

■ The compromise of a disputed claim or default right has always been regarded as a sufficient foundation for an agreement. (*Silver* v. *Shemanski,* 89 Cal.App.2d 520, 531 [201 P.2d 418]; *Craft* v. *Craft,* 49 Cal.2d 189, 192 [316 P.2d 345].)

■■ In *Bennett* v. *Bennett,* 219 Cal. 153 [25 P.2d 426], it was held that a wife has a right to enter into a compromise agreement with her husband pending an action for separate maintenance and while her rights are still finally undetermined, and such an agreement is valid, although the court ultimately grants the husband a divorce; and that a doubtful right is sufficient consideration for a contract, even though it afterwards turns out the right was on the other side.

It is also contended that the stipulation was not a contract and no part of the original agreement, citing *Goldstein* v. *Goldsmith,* 276 N.Y.S. 861; *Gaudio* v. *Gaudio,* 138 Cal.App. 289 [32 P.2d 156]; *Johnson* v. *Superior Court,* 128 Cal.App. 584 [17 P.2d 1055]; and *Marrs* v. *Superior Court,* 137 Cal. App. 579 [30 P.2d 1030]. As heretofore said, and as the court found, the stipulation modified the terms of the written agreement to the extent that the court was authorized to award support money under it. (*Main Street etc. Co.* v. *Los Angeles Traction Co.,* 129 Cal. 301 [61 P. 937].)

■ There is no material variation between the order and the agreement as to the dates when the alimony should be

paid. Where the agreement itself provided for modification of the support provisions, the court can modify it unless the support is integrated with the property division. (*Adams* v. *Adams*, 29 Cal.2d 621 [177 P.2d 265]; *DeLeshe* v. *DeLeshe*, 80 Cal.App.2d 517 [181 P.2d 931].) Apparently the parties have accepted the power of the court to modify the support provisions and the court has acted consistently upon the provisions for support as severable from the provisions for division of the general community property.

Finally, defendant argues that plaintiff should be estopped from now questioning the interlocutory decree, final decree and subsequent orders on the ground that such decrees and orders have become final and are res judicata on the appeal before us. It is true that where there is error in awarding alimony in an interlocutory decree for lack of power or jurisdiction, and it is not urged by a timely appeal, or motion for relief under section 473 of the Code of Civil Procedure, it may be attacked at any time if void, and where such error appears on the face of the record. (*Craft* v. *Craft*, 49 Cal.2d 189 [316 P.2d 345].) Under the findings and conclusions here reached the interlocutory judgment became final, as well as the orders subsequently made, which plaintiff attempts to reach on this appeal from the order refusing to vacate them. Ordinarily, where there is a right of appeal from a judgment or order, a party cannot take an appeal from a subsequent order denying a motion to vacate the judgment or order complained of, under such circumstances that the motion merely calls upon the court to repeat or overrule the former ruling on the same facts. (3 Cal.Jur.2d, p. 490, § 57; 49 C.J.S. p. 559, § 306.)

It might well appear that plaintiff could have appealed from the interlocutory and final decrees and failed to do so; that he subsequently recognized their validity and made payments under them; that he subsequently attacked their validity on the same grounds without success, and without appeal; and that he subsequently secured a reduction in the amount of alimony. This may have been sufficient to terminate these proceedings. However, on the merits of the case, we are convinced that the order from which this appeal has been taken should be affirmed. (*Hough* v. *Hough*, 26 Cal.2d 605 [160 P.2d 15].)

 Defendant claims that this court should award her suit costs because she believed the trial court erred in its reasons for denying her application for such costs in that

court. Apparently she did not appeal from that order. A request for attorney's fees for services rendered on appeal in a divorce action should ordinarily be addressed to the trial court. (*Craft* v. *Craft, supra,* p. 194.)

Order denying motion to set aside provisions of interlocutory decree and final decree awarding alimony, and later orders pertaining to alimony are affirmed.

Shepard, J., and Coughlin, J. pro tem.,* concurred.

A petition for a rehearing was denied December 12, 1958, and appellant's petition for a hearing by the Supreme Court was denied January 21, 1959.

*Assigned by Chairman of Judicial Council.