**LEO C. LEWIS, Appellant**

v.

**ZELL S. LEWIS, Appellee**

Civil No. 76-A

District Court of Guam

Appellate Division

October 2, 1974

Before WILLIAMS, TURNER, and BENSON, *Judges*

WILLIAMS, *Designated Judge*

OPINION

The issue in this case is whether the husband, a successful plaintiff in a contested divorce action, may be com-

pelled to honor a commitment, made in open court and subsequently included in the decree of divorce, to pay alimony to his offending spouse.

The essential facts herein are as follows:

After a three-week long, bitterly-contested trial in the Island Court of Guam plaintiff husband was granted a divorce from his wife on grounds of extreme cruelty.

At the conclusion of the trial, and prior to judgment, the trial judge, obviously weighing and balancing in his mind the serious economic as well as legal consequences that would flow from his decision, addressed counsel for the husband as follows:

"THE COURT: You think alimony support to the wife, in the event the husband is successful is unauthorized?

"MR. BRAMHALL: No, I don't think that. No. I certainly don't think that and as I said I—as I began the remarks, *we do want the wife to have* alimony . . . ." (Emphasis added.) (Transcript P. 1683.)

Later on in his closing remarks counsel reiterated in even more positive terms, his client's belief that the wife receive support:

"Your Honor, I believe that justice and the law require that a divorce be granted on the grounds of extreme cruelty; that custody be granted to the father upon such liberal term as the court feels should be imposed. *That the mother be granted support.*" (Emphasis added.)

The interlocutory decree as thereafter entered, awarded the husband custody of two minor children, divided the community assets, required that the husband maintain two (2) twenty thousand dollar ($20,000) life insurance policies on his life naming his former wife irrevocable beneficiary, and ordered him to pay $500.00 per month "for her permanent support and maintenance . . . until further order of a court of competent jurisdiction."

Cross appeals were taken to the Appellate Division, District Court of Guam, the wife contesting both the jurisdiction of the lower court and its judgment awarding custody of the children to the husband, the husband challenging the division of the community property and the requirement that he be compelled to maintain the two life insurance policies. No appeal was taken from the portion of the interlocutory decree awarding support to the wife. On May 10, 1973 the Appellate Court affirmed the jurisdiction of the lower court and its decision as to the custody of the children and remanded the question of the division of the community property, finding that the trial court had awarded the wife more than 50% of the community property in violation of Guam Civil Code § 146.

On June 11, 1973 defendant wife appealed this decision to the Ninth Circuit which affirmed the lower court. *Leo C. Lewis v. Zell S. Lewis*, February 26, 1974, Slip Opinion No. 73-2474.

In September 1973, and during the pendency of the above appeal, plaintiff discontinued making his support payments and noticed a motion to vacate the portion of the interlocutory decree ordering payment of support. The matter was heard on the 20th of October and denied on the 1st day of November 1973. The appeal before us here is from the order denying the motion to vacate.

Appellant urges a strict interpretation of Guam Civil Code § 139[1] and argues that this case is controlled by *Hager v. Hager*, 199 C.A.2d 259, 18 Cal.Rptr. 695 (1962); *Carr v. Carr*, 165 C.A.2d 568, 332 P.2d 185 (1958); *In re*

---

[1] § 139. *Family support.* When a dissolution of marriage is granted for an offense of the husband, the court may compel him to provide for the maintenance of the children of the marriage, and to make such suitable allowance to the wife for her support, during her life, or for a shorter period, as the court may deem just, having regard to the circumstances of the parties respectively; and the court may, from time to time, modify its orders in these respects. [Enacted 1953.]

237

*Spencer*, 83 Cal. 460, 23 P. 395 (1890); and *Marrs v. Superior Court*, 137 C.A. 579, 30 P.2d 1030 (1934).

■ It is true that Guam Civil Code § 139 is identical to California Civil Code § 139 and that where such identity exists, decisions of the Supreme Court of California are accepted as precedent for interpreting the statutes of Guam, *United States v. Johnson*, 181 F.2d 572 (9th Cir. 1950). However, while accepted as precedent, they are far from binding and particularly where the California decisions have been rendered after the adoption of the Guam Statute, in which case they are held to be merely "persuasive." *Tabor v. Ulloa*, 323 F.2d 823 (9th Cir. 1963).

Assuming arguendo that a strict application of California law as interpreted by the Supreme Court is required here[2] appellant still fails to demonstrate error on the part of the trial court.

*In re Spencer* does contain language that allowance for alimony ". . . cannot be made when the divorce is granted for the offense of the wife—only when it is for an offense of the husband . . . ." However the case was a proceeding on habeas corpus and stands only for the proposition that the lower court had jurisdiction to compel a husband who was the wrongdoer, to make support payments to his divorced wife, even though the divorce decree had erroneously characterized the payments as "permanent alimony."[3]

The *Marrs* case is not a decision of the State Supreme Court and thus imposes no precedential constraint on this court. Furthermore, while similar in some respects to the facts of this case, and favorable to appellant's position, it

---

[2] The court takes judicial notice that in 1969 California abandoned the fault concept for adjudication of such matters as dissolution of a marriage and the award of support. California Civil Code §§ 4502, 4506, 4507, 4509, 4801.

[3] The California Statute only used the term "alimony" in regards to payments pendente lite. *Post* divorce payments were referred to as ". . . suitable allowance to the wife for her support. . . ."

was decided in 1934 before many subsequent California cases which have substantially eroded the strict application of the general rule sought here.[4] *Hager v. Hager* also lacks the clout of a Supreme Court ruling. Furthermore it misses the mark, for unlike the case at bar, there was no promise or stipulation on the part of Mr. Hager to support his divorced wife.

*Carr v. Carr* enumerates the many exceptions to the strict rule which California courts have fashioned over the years, and quotes at length from a Maine case[5] which, in enforcing a promise to pay alimony to a divorced wife, turns *not* narrowly on the "alimony-as-part-of-a-property-settlement" device but on the point that the law neither prohibits the parties from entering into a proper agreement in reference to alimony nor forbids the court from rendering a judgment in accordance with that agreement. The Maine court properly points out that no agreement could vest it with jurisdiction where none had been conferred upon it by the legislature, but went on to say that since the court had "power to adjudge concerning the general question [i.e., of divorce and alimony] involved" the consent of the parties authorizes the court to render a valid judgment in accordance therewith.

---

[4] For example: In *DeBurgh v. DeBurgh*, 39 C.2d 858, 250 P.2d 598 the Supreme Court relaxed the rule by saying alimony could be ordered paid to a guilty wife when the husband was equally guilty and subject to being divorced. And in *Mueller v. Mueller*, 44 C.2d 257, 282 P.2d 869 at 871 (1955) Justice Traynor, writing for a divided court rejected the type of rigidity appellant would have us adopt here and cites with approval a number of cases in other jurisdictions which allow alimony to a divorced wife.
"They counsel the wisdom of caution before adopting any arbitrary rule that would fetter discretion and require the trial court to deny alimony merely because the wife has been guilty of adultery. As pointed out by the Supreme Court of Utah in dealing with a similar problem, 'Great caution is necessary to prevent the contentions and strife which frequently exist in contested divorce cases from distorting the judgment by placing extraordinary emphasis on particular instances of blameworthy conduct or some unusual sacrifice or contribution in some one phase of the over-all picture.' *MacDonald v. MacDonald,* . . . 236 P.2d 1066, 1069. It certainly does not comport with good conscience to turn such an unfortunate individual out to fend for herself after having given 29 years to this marriage, good or bad as her conduct may have been." Ibid.

[5] *Stratton v. Stratton*, 77 Me. 373, 36 A.2d 773.

239

Admittedly, the *Carr* case itself recites the standard jurisdiction-through-property-settlement litany but the court's acceptance of the more persuasive logic of the *Stratton* decision rings loud and clear.[6]

This court believes that there are other compelling reasons for enforcing stipulations and promises made in open court. It is sheer nonsense to say that stipulations and promises should not—or do not—have any impact on the trier of fact, be it judge or jury, and that they should not—or do not—in some way, either directly or indirectly, affect the outcome of the trial. To permit the parties and counsel to offer such promises and stipulations in the belief that they are unenforceable and can be subsequently rejected out of hand would seriously undermine a judge's ability to properly conduct the business of his court. Certainly if a stipulation were in error or beyond the power of counsel, prompt corrective steps can and should be taken. Furthermore, if a judgment is alleged to be invalid due to improper reliance on a stipulation, appeal is the proper remedy. If reversed the trial judge can again consider the case as a whole. But what plaintiff seeks here, is to have the full case to go to final judgment and then, twenty-seven (27) months after its original entry carve out those portions which impose a burden on him. This court is not in a position to speculate whether we have arrived at this point through a deliberate ruse or an innocent mistake, but regardless of which it is it is not difficult to imagine the many

---

[6] The court also quotes at length from *Stratton* which recites additional equitable rationale for its ruling. At 775 of 36 A.2d:

"It is difficult to conceive of more compelling particular circumstances justifying the employment of the exception to the general rule than when, with the parties before the Court, there is a noncollusive, court-approved agreement as to alimony, perhaps then acceded to by the husband because he believes that it is only fair and just that following the separation she have such support, which he is willing to provide, and especially when she may have no other means due to age, poor health, or some other cause. She may believe she could prevail in a contest, but desists in reliance upon his valid promise. He obtains his divorce. Afterwards he breaks his word. Should the Court shield him in such reprehensible act and deny her the agreed-upon subsistence because he obtained his divorce for her fault?"

injustices which could be perpetrated upon litigants and courts alike if such a practice were permitted.

The court is informed that both parties now reside in California. Furthermore it is not unmindful that the changing attitude in California, as well as elsewhere, towards woman's rights and obligations in modern society has affected the amount and duration of alimony being awarded by the courts.

And while we are in no position to pass on the merits of the continuation or modification of alimony in the instant case, it seems appropriate to point out that both by the terms of the decree and by the application of general law either party may petition the California courts for such review and modification as they believe is appropriate. *Worthley v. Worthley*, 44 C.A.2d 465, 283 P.2d 19 (1955).

The judgment is affirmed.

BENSON, *Designated Judge*, concurring.

The appellant's motion to vacate the support provisions constitutes a direct attack on the interlocutory decree of divorce.

The court had jurisdiction of the parties and of the subject matter of the action, the marriage res. Because of statute (Section 139 of the Civil Code) and decisional restraint (e.g., *Atendido v. Atendido* (1974), District Court of Guam Appellate Division Case No. 94-A), the court did not have subject matter jurisdiction to award alimony to the guilty wife. Such award was in excess of the court's jurisdiction.

Since subject matter jurisdiction cannot be conferred by the consent of the parties, the issue presented by this appeal is whether or not the appellant has standing to complain of the alimony award.

The trial court properly denied the appellant's motion.

The appellant is precluded from objecting to the alimony award after he twice asserted during trial his wish that

241

appellee be granted alimony. The opinion in this case on page 7 forcefully sets forth the effect of such representations on the trial court. That the appellant should thereafter be estopped from complaining when the court took the action which the appellant invited is directly supported by authority. *In re Griffin* (1967), 67 C.2d 343, at p. 348, 62 C.R. 1, 431 P.2d 625; *City of Los Angeles v. Cole* (1946), 28 C.2d 509, at p. 515, 170 P.2d 982; 1 Witkins, California Procedure, Second Edition, pp. 756–759. Such estoppel is necessary in this case for the proper functioning of the court. "To hold otherwise would permit the parties to trifle with the courts. The law should not and in our opinion does not countenance such action." *City of Los Angeles v. Cole*, supra, 28 C.2d, at p. 515.

In *Seymour v. Seymour* (1937), 18 Cal.App.2d 481, 64 P.2d 168, the husband moved to eliminate that portion of the interlocutory decree which granted alimony to the guilty wife. At the trial the parties had introduced a property settlement with alimony for the wife. The court held that having invoked the jurisdiction of the court the husband was not later entitled to contend that the judgment in regard to alimony was invalid.

*Frank v. Frank* (1969), 275 Cal.App.2d 717, 80 Cal. Rptr. 141, is remarkably similar to the instant case. The husband collaterally attacked the provision in the interlocutory and final decrees for alimony of a fixed sum payable for a four year period "irrespective of remarriage". The contention of lack of jurisdiction under Section 139 of the California Civil Code was raised after the wife remarried within the four year period. Section 139 provided that unless agreed to in writing, alimony terminated upon remarriage. The alimony provision for a fixed period had been stipulated to at trial, but was not in writing, and the provision "irrespective of remarriage" was included in the interlocutory and final decrees. Aware of the provision,

the husband had not raised the issue in his appeal because he considered it void. The court held that the trial court's decree was in excess of the jurisdiction, but that the husband had no standing to raise the question by collateral attack where the court had fundamental jurisdiction of the parties and the subject matter. The court pointed out (as the opinion does in the instant case) that had the point been raised on appeal, the trial court could have, on remand, reconsidered the case as a whole. The husband's petition for a hearing by the Supreme Court of California was denied.

For the above reasons, the order denying appellant's motion should be affirmed.